IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------  :
ROBERT L. CANADY, SR., et al.,                          : CASE NO.  1:04 CV 0711
                                                        :
                                  Plaintiffs            :
                                                        :
                      -vs-                              : <u>MEMORANDUM AND ORDER</u>
                                                        : <u>GRANTING DEFENDANT'S MOTION</u>
                                                        : <u>FOR DISMISSAL AND  SUMMARY</u>
ROBERT C. KLAIBER, JR, CUYAHOGA                         : <u>JUDGMENT AND DENYING</u>
COUNTY ENGINEER,                                        : <u>PLAINTIFFS' MOTION FOR LEAVE TO</u>
                                                        : <u>FILE SUPPLEMENTAL EXHIBITS AND</u>
                                  Defendant.            : <u>AFFIDAVITS.</u>
------------------------------------------------------

UNITED STATES DISTRICT JUDGE LESLEY WELLS

        Plaintiffs Robert Canady, Sr., Thomas Coleman and Philliphine DeLoach

(collectively "plaintiffs") brought this action alleging racial and national origin

discrimination in promotions and benefits during employment with defendant, Cuyahoga

County Engineer department, Robert C. Klaiber, Jr., County Engineer (hereinafter,

"defendant" or "County Engineer").  (Docket No. 12).  The plaintiffs bring five claims in

all, in their amended complaint, alleging the defendant: unlawfully discriminated on the

basis of race or color in violation of Title VII and O.R.C. 4112 (Count 1); deprived the

plaintiffs of their rights to equal protection of the laws as guaranteed by the Fourteenth

Amendment of the United States Constitution (Count II, appearing to seek relief under

42 U.S.C. §§ 1981 & 1983); conspired to deny the plaintiffs the equal protection of the

laws and of equal privileges and immunities on the basis of race (Count III, appearing to seek relief under 42 U.S.C. § 1985); acted wilfully, maliciously, and negligently toward the plaintiffs (Count IV); caused the plaintiffs to suffer severe emotional distress as a result of the unlawful denial of promotions (Count V).

This matter is currently before the Court on the defendant's Motion for Judgment on the Pleadings, pursuant to Fed. R. Civ. P. 12, and for Summary Judgment, pursuant to Fed. R. Civ. P. 56.  (Docket Nos. 21, 28).  The plaintiffs filed a brief in opposition Docket No. 29), which the Court, in a subsequent clarifying Order, construed as an opposition to the defendant's motion for Summary Judgment.  (Docket No. 31).  The plaintiff filed a timely brief in reply.  (Docket No. 34).

More than five weeks after filing their brief in opposition, the plaintiffs filed a motion for leave to file "supplemental exhibits and affidavits."  (Docket No. 33).  The defendant filed a brief in opposition to that request.  (Docket No. 35).

For the reasons set forth below, the Court will dismiss the plaintiffs' Title VII allegations as time barred and will dismiss the plaintiffs' remaining allegations as a matter of law pursuant to Fed. R. Civ. P. 56.  In addition, the Court will deny the plaintiffs' motion for leave to file supplemental exhibits and affidavits.


I.      **Factual Background**

The three plaintiffs in this action continue to work for, or are retired from, the Department of the Cuyahoga County Engineer.  Plaintiff Thomas Coleman has been employed by the County Engineer since 1988 as a construction laborer.  (Coleman Depo. at 9).  Plaintiff Robert L. Canady, Sr., has been employed by the County

2

Engineer since 1980 as a maintenance laborer and as an acting construction foreman. (Canady Depo. at 21-22).  Plaintiff Phylliphine DeLoach retired from the County Engineer's office on 31 July 2002 as a construction laborer having started his employment with the County Engineer in 1977.  (DeLoach Depo. at 8).

Together the plaintiffs commenced their original action in Federal Court on 8 February 2002 in Case No. 1:02 CV 0246.  That action brought before the Court as defendants: Robert C. Klaiber, Jr., Cuyahoga County Engineer; Local 436 Teamsters; and, the County of Cuyahoga, Ohio.  Pursuant to the plaintiffs' motions, the Court dismissed the plaintiffs' claims without prejudice against Local 436 Teamsters on 26 March 2002, against the County of Cuyahoga, Ohio on 23 January 2003, and finally, against the County Engineer on 17 April 2003.  (Docket Nos. 9, 20, 25 of Case No. 2 CV 246).

On 16 April 2004, the plaintiffs filed the instant matter against the County Engineer.  On 11 July 2005 the plaintiffs amended their complaint to allege the five claims discussed above.  The plaintiffs' complaint alleges that, despite a 1977 Consent Decree enjoining racially discriminatory employment practices toward Blacks in the Cuyahoga County Engineer department, the department continues to engage in a pattern of racially discriminatory employment practices against the named plaintiffs. (Amended Complaint, ¶¶ 5-10).  The complaint avers that, since their hire, the plaintiffs have been assigned heavier work loads, under more difficult conditions than their White counterparts and, that "on more than one occasion" white painters helpers were promoted over the plaintiffs who held more seniority.  (¶¶ 11-13).  The plaintiffs further aver that the test for promotion from the laborer to painter position was changed to favor

3

White employees and the position of painter foreman was manipulated to avoid the appointment of a Black employee with the highest seniority.  (¶¶ 14-15).  The complaint further avers the County Engineer maintained racial distinctions to the detriment of Black workers' promotion opportunities, between "Miles Yard" and "Fitzwater Yard," leading to a racial imbalance in which there is only one Black in the "trades" and no Black plumbers in the County Engineer's department.  (Complaint ¶¶ 16-23).  The plaintiffs, finally, aver malicious harassment by White employees, including racial slurs and demeaning conversations, which the Union and Management failed to address.  (¶¶ 24-27).

## II.    Law and Analysis

### A.  Standard of Review for Dismissal

A 12(b)(6) motion to dismiss for failure to state a claim "should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957). All well-pleaded allegations must be taken as true and be construed most favorably toward the non-movant.  Schuer v. Rhodes, 416 U.S. 232, 236 (1974).

A 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it.  Roth Steel Products v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir.1983).  The merits of the claims set forth in the complaint are not at issue on a motion to dismiss for failure to state a claim.  Consequently, a complaint will be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) only if there is no law to support the claims

4

made, if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief.  Rauch v. Day & Night Mfg. Corp., 576 F.2d 857, 858 (6th Cir.1976).  Rule 12(b)(6) must be read in conjunction with Fed.R.Civ.P. 8(a) which provides that a pleading for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  5A Wright & Miller, Federal Practice and Procedure § 1356 (1990).  The moving party is entitled to relief only when the complaint fails to meet this liberal standard. Id.

### B.  Defendant's motion to procedurally dismiss the plaintiffs' Title VII claim.

The United States Supreme Court has held that Title VII requires that a party alleging discrimination must follow mandatory administrative procedures before filing a complaint in federal court.  Brown v. Gen. Services Admin. 425 U.S. 820, 823-833 (1976).  Before filing a civil action, an aggrieved employee must contact the Equal Employment Opportunity Commission (EEOC) within 45 days of the alleged discriminatory event.  29 C.F.R. § 1614.105(a)(1).

Only after a final decision is issued may an aggrieved employee file a civil action. Filing a timely EEOC complaint is a statutory requirement for filing a Title VII claim in federal court.  Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 798 (1973).  A plaintiff must be in receipt of a statutory notice of the right to sue from the Commission.  Alexander v. Gardner-Denver, Co., 415 U.S. 36, 47 (1974).  The civil suit must be limited to the "scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination."  EEOC v. Bailey Co. Inc., 563 F.2d 439, 446 (6th Cir.1977).  Claims not first brought before the

5

EEOC cannot be brought before federal courts.  Ang v. Procter & Gamble Co., 932 F.2d 540, 545 (6th Cir.1991).

If a plaintiff's civil claim is filed within the 90 day limit, but then dismissed, his or her suit will be treated as never having been filed and it cannot later be refiled after the 90 day period has elapsed.  Wilson v. Grumman Ohio Corp., 815 F.2d 26, 27 (6th Cir.1987).  In Wilson, a Title VII plaintiff filed a timely civil suit, which was later dismissed for failure to perfect service.  Plaintiff then attempted to refile 85 days after the dismissal, and over 15 months after the EEOC's final decision.  The district court dismissed the suit, and the Sixth Circuit affirmed, holding that the filing of a compliant which is later dismissed without prejudice does not toll the statutory filing period of Title VII. Id.

In this case, the plaintiffs filed their initial complaint against the County Engineer's Office, alleging employment discrimination under Title VII, on 8 February 2002.  (Case No. 2 CV 246).  On 29 March 2002 plaintiffs Deloach and Coleman received letters from the EEOC dismissing the charges they had filed the previous year and providing notice of the right to sue within 90 days of the receipt of the notice.  On 9 April 2002 plaintiff Canady received an EEOC letter dismissing the charges he had filed and giving notice of the right to sue within 90 days of the receipt of the letter.  A little more than a year later, the parties motioned for a stipulated dismissal of the suit pursuant to Fed. R. Civ. P. 41(a).  On 17 April 2003 the Court dismissed the matter without prejudice against the County Engineer's Office.  Plaintiffs then refiled their discrimination complaint on 16 April 2004, joining the same parties and bringing the

same claims.  Pursuant to this Circuit's decision in <u>Wilson</u>, the plaintiffs' Title VII claims are time barred and will be dismissed accordingly.[1]

The Court grants the defendant's motion to dismiss the plaintiffs' Title VII allegation (Count I).

### C.  Defendants' Motion for Summary Judgment on the Plaintiffs' Remaining Claims: 42 U.S.C. § 1981, 42 U.S.C. § 1983 and State Law Claims pursuant to O.R.C. 4112.02(A).

### C.1  Summary Judgment Standard

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  The moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Id</u>. at 323;  <u>see also</u> <u>Boretti v. Wiscomb</u>, 930 F.2d 1150, 1156 (6th Cir.1991) (moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial") (<u>quoting</u>

---

[1] The plaintiffs' act of refiling their Title VII claims within one year from the 17 April 2003 stipulated dismissal of the prior action does not save the Title VII claims.  <u>See</u> <u>Burnett v. New York Central R.R. Co.</u>, 380 U.S. 424 (1965) (holding that state "savings statutes" may not save a federal claim that is governed by a federal statute of limitations); <u>Parrish v. HBO & Co.</u>, 85 F. Supp. 2d 792, 797-98 (S.D. Ohio 1999).

Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir.1987)).  The burden then shifts to the

nonmoving party who "must set forth specific facts showing that there is a genuine issue

for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (quoting

Fed.R.Civ.P. 56(e)).  Thus, "[o]nce the moving party has met its initial burden, the

nonmoving party must present evidence that creates a genuine issue of material fact

making it necessary to resolve the difference at trial."  Talley v. Bravo Pitino Restaurant,

Ltd., 61 F.3d 1241, 1245 (6th Cir.1995).  Read together, Liberty Lobby and Celotex

stand for the proposition that a party may move for summary judgment by

demonstrating that the opposing party will not be able to produce sufficient evidence at

trial to withstand a motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50.

Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir.1989).

        Once the burden of production has shifted, the party opposing summary

judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is

not sufficient to "simply show that there is some metaphysical doubt as to the material

facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986);

see also Michigan Protection and Advocacy Serv., Inc. v. Babin, 18 F.3d 337, 341 (6th

Cir.1994) (marking as standard that the plaintiff must present "more than a scintilla of

evidence in support of his position; the evidence must be such that a jury could

reasonably find for the plaintiff").  Rather, Rule 56(e) "requires the nonmoving party to

go beyond the [unverified] pleadings" and present some type of evidentiary material in

support of its position.  Celotex Corp., 477 U.S. at 324.  Summary judgment "shall be

rendered forthwith if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show there is no genuine issue as

8

to any material fact and that the moving party is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(c).  Summary judgment shall be denied "[i]f there are . . . 'genuine
factual issues that properly can be resolved only by a finder of fact because they may
reasonably be resolved in favor of either party.'"  Hancock v. Dodson, 958 F.2d 1367,
1374 (6th Cir.1992) (citation omitted).

### C.2  Plaintiffs' Motion for Leave to File Supplemental Exhibits and Affidavits.

As an initial matter, the Court will address the plaintiffs' Motion for Leave to File
Supplemental Exhibits and Affidavits.  On 9 February 2006 the plaintiffs filed what the
Court has characterized as a brief in opposition to the defendant's 6 January 2006
motion for summary judgment.  (Docket Nos. 28, 29, 31).[2]  On 21 March 2006, on the
due date for the defendant's reply brief, the plaintiffs' filed their motion asking for leave
to file exhibits and affidavits.  (Docket No. 33).  By way of explanation for the untimely
submission of exhibits and affidavits in support of their brief in opposition, the plaintiffs
averred that the documents were prepared when they filed their responsive pleading on
9 February 2006 but they were attached to a different file and not executed by the
affiants.  The plaintiffs further averred that when they discovered the error, six-weeks
later, the documents were immediately signed and subscribed for filing. (Docket No. 33,
pp. 1).  The plaintiffs provide no further explanation nor proof for this turn of events.

---

[2]In their brief in opposition, the plaintiffs devote unwarranted attention to the 1977 consent decree reached in an unrelated litigation involving a distant predecessor of the defendant. (Docket No. 29, pp. 8-10). The Court regards that conversation as inapplicable to this matter as the plaintiffs provide no evidence the plaintiffs were denied any rights in violation of the 1977 decree.

In a closely argued brief, the defendant opposes the plaintiffs' motion for leave on three grounds: (1) the plaintiffs motion is out of rule as untimely and for failure to seek proper relief under Fed. R. Civ. P. 56(f); (2) the affidavits do not appear to have been prepared on 9 February 2006 as each was executed and notarized on 21 March 2006, the day the plaintiffs filed their motion for leave to supplement; and (3) the plaintiffs' 9 February 2006 memorandum in opposition contains no reference to either the affidavits or the evidence they now seek to introduce, and the 21 March 2006 filings include factual allegations that are not tied to the plaintiffs' arguments in their brief in opposition to summary judgment.

The Court will deny the plaintiffs' motion for leave to file supplemental exhibits and affidavits.  A review of the circumstances surrounding the 9 February 2006 and 21 March 2006 filings suggest the motion for leave to file is neither timely nor well considered.  Fed. R. Civ. P. 56(f).  Further, a review of the filings themselves indicate the exhibits and affidavits cannot be characterized as "supplemental" to the arguments in the plaintiffs' opposition brief.  Finally, the affidavits do no more than mimic, in conclusory fashion, the allegations put forth in the plaintiffs' complaint.  As such, the assertions in the affidavits are insufficient to generate a genuine issue of material fact. Fed. R. Civ. P. 56(c); <u>Mitchell v. Toledo Hospital</u>, 964 F.2d 577, 584 (6th Cir. 1992).

### D.  Merits Review of the Plaintiffs' Federal Claims under Sections 1981 and 1983, and state claims pursuant to ORC 4112.02(A).

The defendant maintains that the plaintiffs' claims pursuant to sections 1981 and 1983 and ORC 4112.02(A) fail as a matter of law for lack of any genuine issue of

material fact.  Further, the defendant maintains the plaintiffs fail to meet either the

burden of proof necessary to establish the *prima facie* case or to surmount the

defendant's legitimate, non-discriminatory reasons for its actions.  In reply, the plaintiffs

do not address the elements of the prima facie case, but simply state "the issue of

pretext is a question of fact to be determined by the jury."  (Docket No. 29, p. 7).

Moreover, the plaintiffs argue against the defendant's efforts at a Rule 56 dismissal by

neither introducing nor discussing any facts in their responsive pleadings beyond the

allegations contained in their amended complaint.  Instead, the plaintiffs merely raise

questions:

> Was the promotion of John Sabo, (White) to the position of painter
> discrimination in light of the fact that at least three black employees (the
> plaintiff) qualified and applied for the position?  Is the fact that white
> employees were making as much as seven dollars more per hour than
> blacks evidence of discrimination?  Is the reason that the defendant gave
> for his failure to promote qualified b[l]acks to the position of painter and
> foreman a mere pretext?  Is the fact that the employer occasionally refers
> to his black employees as "niggers" evidence of discrimination?  Is the fact
> that the defendant unilaterally phased out seniority requirements just long
> enough to promote two white employees discrimination?

(Docket No. 29, p. 9).

As the Court reviews the defendant's motion for summary judgment in this matter

it will bear in mind the admonition of the United States Supreme Court in <u>Celotex</u>, that

Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and

present some type of evidentiary material in support of its position.  <u>Celotex Corp</u>., 477

U.S. at 324.

The Court will consider the plaintiffs' legal claims for relief under sections 1981,

1983 and Ohio law by viewing each through the plaintiffs' assertions of workplace

11

discrimination, encompassing: (1) disparate treatment; (2) job promotions to the

positions of Construction Foreman and Painter; and, (3) hostile work environment.  The

legal analysis – the allocation of the burden of proof and the elements of a *prima facie*

case – is the same in each claim, whether the Court is considering the plaintiffs' section

1981, 1983 or ORC 4112.02 protections.[3]  See Noble v. Brinker Int'l, Inc., 391 F. 3d

715, 720 (6th Cir. 2004) (noting the legal analysis for employment claims arising under

Title VII and section 1981 is the same and noting Ohio courts have held that the

evidentiary standards and burdens of proof applicable to a claimed violation of Title VII

are likewise applicable in determining whether a violation of ORC § 4112 has occurred);

Smith v. City of Salem, Ohio, 378 F.3d 566, 577 (6th Cir. 2004) (finding the necessary

proof for recovery under a disparate treatment claim pursuant to Title VII parallels the

proof necessary to recover on an equal protection claim under section 1983).

 The McDonnell Douglas burden-shifting analysis applies to this matter where the

plaintiffs' have alleged discrimination and offer indirect evidence as proof. Under

McDonnell Douglas, and its progeny, the plaintiffs may establish a *prima facie* case of

discrimination indirectly by showing that (1) the plaintiffs are members of a protected

class; (2) the plaintiffs suffered adverse employment actions; (3) the plaintiffs were

qualified for the positions for which they applied; and (4) a person outside of the

---

[3]This review specifically deals with the relief requested in Counts 1-3 of the plaintiffs' amended complaint pursuant to sections 1981, 1983, 1985 and ORC 4112.02.  The plaintiffs' third count, alleging a conspiracy to discriminate and seeking relief under 42 U.S.C. § 1985, warrants special mention.  The terms of the averment, that "each defendant conspired" to deprive the plaintiffs does not comport with the nature of this case.  There is, after all, only one defendant and a conspiracy cannot exist under that circumstance.  Accordingly, Count III is misplaced, and legally ineffectual, in this particular matter.  As such, the Court will treat the assertion couched in paragraph 31 of the amended complaint as a claim that the defendant engaged in discriminatory conduct and, therefore, a claim that merely duplicates the previous assertions by the plaintiffs in counts I and II of the amended complaint.

plaintiffs' protected class but similarly situated was treated more favorably than the plaintiff.  McDonnell Douglas Corp. V. Green, 411 U.S. 792 (1973); Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981); McClain v. NorthWest Cmty. Corr. Ctr. Judicial Corr. Bd., 440 F.3d 320, 332 (6th Cir.2006).

Once the plaintiffs have established a *prima facie* case, the burden of going forward then shifts to the defendant employer to articulate a legitimate, non-discriminatory reason for its actions.  See McDonnell Douglas Corp., 411 U.S. at 802-3; Wrenn v. Gould, 808 F.2d 493, 500 (6th Cir.1987).  If the defendant employer satisfies its burden, the plaintiff then bears the burden of proving that the defendant's articulated non-discriminatory reason was merely a pretext for discrimination.  See Burdine, 450 U.S. at 256; Wrenn, 808 F.2d at 501.

### D.1  Plaintiffs' Disparate Treatment Claims

The defendant maintains that none of the plaintiffs' allegations of disparate treatment succeed in establishing a prima facie case because none of the allegations amount to an "adverse employment action."  (Docket No. 28, pp. 10 13).  The plaintiffs specifically allege they were assigned heavier work loads (Am. Compl. ¶ 12), they were relegated to the maintenance department at Miles Yard (Am. Compl. ¶ 19), and were denied the chance to learn how to operate special equipment (Am. Compl. ¶ 21).  In reply, the plaintiffs make no further allegations, nor provide any further evidence of disparate treatment in their opposition brief.  (Docket No. 29).

To satisfy the *prima facie* case for disparate treatment, the plaintiffs must provide some evidence of a material change in the terms and conditions of each of their employment circumstances.  This may include a range of events, such as terminations,

13

failure to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.  Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761. (1998).  These changes must be material rather than *de minimus* and the desirability, from a plaintiff's subjective vantage, of one position over another does not determine whether an adverse employment action has occurred.  Kocsis v. Multi-Care Management, Inc., 97 F. 3d 876, 886 (6th Cir. 1996).

In this instance, the Court does not find a materially adverse employment action in the plaintiffs' allegations of disparate treatment.  The plaintiffs' allegations of undesirable or more difficult work assignments does not constitute an adverse employment action as a matter of law where there is no change in the terms of conditions of employment.  See Johnson v. Cambridge Industries, Inc., 325 F. 3d 892, 901 (7th Cir. 2003) (finding that provision of more difficult work assignments did not amount to an adverse employment action where no change in the terms and conditions of employment occurred).

Nor does the Court consider the plaintiffs' allegation that they were relegated to the "Miles Yard" maintenance department a materially adverse employment action.  Deposition testimony from all three plaintiffs indicated they preferred the "Miles Yard" assignment because it was closer to their respective homes.  (Canady Depo, pp. 14-15, requested transfer to Miles Yard; De Loach Depo, p. 18, never requested to be transferred from Miles Yard because of the commuting convenience; Coleman Depo., p. 10, requested transfer to Miles Yard) (Docket No. 28, Exhibits D, E, F).

14

Finally, the Court does not regard the plaintiffs' allegations that they were denied training to operate special equipment as amounting to a materially adverse employment action.  Martin v. General Elec. Co., 187 Fed.Appx. 553, 560 (6th Cir. 2006) .

The plaintiffs' claim concerning the County Engineer's alleged refusal to train creates no genuine issue of material fact because none of the plaintiffs have established that similarly situated White employees received training opportunities that they did not.  Plaintiffs simply assert they were not given the same opportunities and/or treatment enjoyed by their White counterparts.  They do not identify which employees were receiving training or what training these employees received.  The plaintiffs vague and unsubstantiated assertions may be appropriate to state a claim in a complaint, but they are insufficient to satisfy their burden on summary judgment.  Moreover, the evidence indicates plaintiffs De Loach and Coleman did not request to be placed on a list to operate special equipment, (De Loach Depo, p. 36; Coleman Depo., p. 34), and plaintiff Canady considered his experience operating some special equipment to "automatically" qualify him to operate other special equipment.  (Canady Depo., p. 36).

In addition, the evidence presented by the plaintiffs fails to establish they were treated differently from any other similarly situated employee outside of the protected class.  To be similarly situated, exact correlation is not required, but the plaintiffs and the employees with whom the plaintiffs seeks to compare themselves must be similar in "all of the relevant aspects."  Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir.1998)(quoting Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 802 (6th Cir.1994)).  The non-minority employees must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct

15

without differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them.  Ercegovich, 154 F.3d at 352; Kroh v. Continental Gen. Tire, Inc., 92 Ohio St .3d 30, 31, 748 N.E.2d 36 (2001).  In this instance, the plaintiffs have failed to identify similarly situated employees outside of the protected class in order to establish the necessary elements of disparate treatment.

The plaintiffs' failure to meet the evidentiary burden of establishing a *prima facie* case of disparate treatment leads the Court to grant the defendant's summary judgment request in this regard as it applies to the plaintiffs' claims pursuant to sections 1981 and 1983 and ORC 44102.02(A).

### D.2  Plaintiffs' Claims of Discriminatory treatment in Consideration for Job Promotions.

The Court, next, considers the defendant's motion for summary judgment as it applies to the plaintiffs' claims of discrimination in the context of denied job promotions. The denial of a promotion may constitute an adverse employment action and establish disparate treatment where the plaintiff has demonstrated that: (1) he or she is member of a protected class; (2) he or she applied for and was qualified for a promotion; (3) he or she was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions at the time the plaintiff's request for promotion was denied.  See Nguyen v. City of Cleveland, 339 F. 3d 559, 562-563 (6th cir. 2000).

The plaintiffs allege they were denied promotions in two instances – in their applications for the positions of Construction Foreman and Painter.  The defendant asserts that none of the plaintiffs managed to qualify for the Construction Foreman

16

position because each failed to meet the minimum test score required on the written component of the promotion process.  (Docket No. 28, pp. 14- 15; Docket No. 34, pp. 4-5; Affidavit Barbara Hopkins, Exhibit B, ¶ 4).

This uncontroverted evidence suggests the plaintiffs cannot establish the essential element of their *prima facie* case that they were qualified for the promotion for which they each applied.  It also demonstrates the legitimate non-discriminatory reason for the County Engineer's decision not to promote any of the plaintiffs to the position of Construction Foreman.  The Court finds the plaintiffs have failed to establish disparate treatment in the County Engineer's action to deny the plaintiffs promotion to the position of Construction Foreman.

With regard to the position of Painter, the defendant provides evidence of a legitimate non-discriminatory rationale for the person eventually hired by the County Engineer.  The defendant provided evidence of a reasonable promotion process with regard to choosing the person eventually promoted.  That person, John Sabo, a white employee, was promoted to the Painter position by a three-person committee based on the applications and the results of the interview process.  Affidavit evidence indicates that Mr. Sabo's experience in the county's paint shop and experience with sandblasting and structural painting rendered him the most qualified candidate.  (Affidavit Barbara Hopkins, Exhibit B, ¶ ¶15-17; Affidavit Edward Salk, Exhibit C, ¶¶ 2, 3).

The plaintiffs may endeavor to demonstrate that the County Engineer's proffered reasons for promoting Mr. Sabo are a pretext for discrimination by showing: (1) that the proffered reason had no basis in fact; (2) that the proffered reason did not actually motivate the employer's conduct; or (3) that the proffered reason was insufficient to

17

warrant the challenged conduct.  See White v. Columbus Metropolitan Housing Authority, 429 F. 3d 232, 245 (6th cir. 2004).  However, the plaintiffs provide no evidence to rebut the defendant's explanation or to show the County Engineer's explanation was mere pretext in any of the ways detailed in White.[4]

The plaintiffs failure to controvert the defendant's evidence of a legitimate, non-discriminatory rationale for promoting Mr. Sabo leads the Court to find no genuine issue of material fact with regard to the plaintiffs' allegations of failure to promote to the Painter position.

### D.3  Plaintiffs' Claim of a Hostile Work Environment

The final category of allegation involves the claim that the County Engineer subjected the plaintiffs to a hostile work environment.  (Am. Compl. ¶ 27).  Specifically, the plaintiffs maintain that County employee Patrick McNamara referred to plaintiff Canady and others at the Miles Yard as "those niggers."  The defendant contends the claim fails as a matter of law because the incident was isolated and the perpetrator reprimanded.  (Docket No. 28, pp. 16-18).

The standard for establishing a claim for hostile work environment requires the plaintiffs to prove that under the totality of the circumstances the alleged conduct is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993).  Courts look to the frequency of the complained of conduct, its severity, whether

---

[4]Even if the Court were to consider the plaintiffs' "supplemental" exhibits and affidavits no material evidence emerges, but merely the unsubstantiated conclusory statement that the Painter position "was given to a less qualified white employee, John Sabo."  (Docket No. 33, Exhibit 5, Canady Affidavit ¶ 4).

it involves humiliation or physical threat or a merely offensive utterance.  Courts also

consider whether the conduct unreasonably interferes with an employee's work

performance.  Id. at 23; Clark v. United Parcel Service, Inc. 400 F. 3d 341, 351 (6th Cir.

2005) (harassment should be ongoing rather than isolated or sporadic).

Generally, Courts have not found isolated utterances of racially offensive

language alone to be severe or pervasive enough to create a hostile work environment

by altering the terms and conditions of employment.  See Jackson v. Flint Ink N. Am.

Corp., 370 F. 3d 791, 795 (8th Cir. 2004 (finding that six racially derogatory comments

over eighteen months did not establish a hostile work environment); Kennedy v. J.P.

Morgan Chase & Co., 325 F. Supp. 2d 401, 410 (S.D.N.Y. 2004) (infrequent racial slurs

prove insufficiently pervasive).

In this instance, the plaintiffs acknowledge that Mr. McNamara's offensive

conduct occurred "on one occasion."  (Am. Compl. ¶ 27).  The defendant offered

evidence that the Director of Human Resources with the County Engineer, Barbara

Hopkins, received the complaint from Mr. Canady and Mr. Coleman, that she

investigated the allegation and, as a result, suspended Mr. McNamara for five days and

referred him to the Employee Assistance Program for educational training.  (Docket No.

28, Exhibit B, ¶ 18).

Under the totality of the circumstances, the isolated offensive utterance of Mr.

McNamara does not appear pervasive or severe enough to alter the terms and

conditions of employment for the plaintiffs and, accordingly, to establish a hostile work

environment claim.  The plaintiffs' hostile work environment claim fails as a matter of

19

law.  The Court will grant the defendant' motion for summary judgment on the plaintiffs' allegation of hostile work environment.

### E.  The plaintiffs' state law tort claims

Finally, the defendant moves for the dismissal through summary judgment of the plaintiffs' state law tort claims.  The plaintiffs maintain the defendant acted wilfully, maliciously, and negligently toward the plaintiffs (Count IV, Am. Compl. ¶ 33), and caused the plaintiffs to suffer severe emotional distress as a result of the unlawful denial of promotions (Count V, Am. Compl. ¶ 34).

The defendant contends the plaintiffs have established no factual foundation for their tort allegations separate from the state and federal employment allegations already summarily dismissed.  Moreover, the defendant argues that ORC 2744.(A)(1) shields the County Engineer's Department from tort liability in instances such as this.

The Court finds the plaintiffs have pled no facts that could give rise to these state law tort claims separate from the allegations of employment discrimination already addressed, and dismissed, by the Court as a matter of law.  Accordingly, the Court grants the defendant's motion for summary judgment on the plaintiffs' state law tort allegations. (Counts IV, V).


### III.    CONCLUSION

For the reasons set forth above, the Court finds no genuine issues of material fact in dispute.  The County Engineer is entitled to judgment as a matter of law on the plaintiffs' claims under Sections 1981 and 1983, and ORC 4112.02.  Accordingly, the

Court grants the defendant's motion to dismiss the plaintiffs' Title VII claim and the

defendant's motion for summary judgment on the remaining state and federal claims.  In

addition, the Court denies the plaintiffs' motion for leave to file supplemental exhibits

and affidavits.


     IT IS SO ORDERED.

                     __/s/Lesley Wells_____
                     UNITED STATES DISTRICT JUDGE

Dated: 8 January 2007